Day, Matthias and Hart, JJ.,
 

 dissenting. The pertinent facts stated in the answer of the defendant, which are admitted by the demurrer and thereby conceded to be true are, that on September 5,1939, certain papers were lodged with the Secretary of State of Ohio, attempting to conform with the requirements contained in the Constitution and in Section 4785-176, General Code, purporting to be a petition for a referendum on House Bill No. 14, enacted by the Ninety-third General Assembly; that such purported petition consisted of 3,815 separate and distinct parts upon which appeared a total of 146,347 names from more than one-half of the counties of the state, but that such papers failed to embody the requisites of a petition for a referendum on such House Bill as required by the Constitution and statutes in the following particulars, to wit:
 

 (1) That of the purported signatures appearing thereon 1,593 were not written in ink as required by Section 1
 
 g
 
 of Article II of the Constitution; (2) that 207 of such signatures appeared on purported parts of such petition forms upon which there was no affidavit of the circulator as required by the same section of the Constitution; (3) that 103 signatures, other than those above noted, were not followed by the date of the alleged signing as required by the same section of the Constitution; and (4) that 5,343 names appeared on petition forms on which the solicitor failed
 
 *10
 
 to make the statement as to what compensation or (property "he had received or expected to receive for 'his Services in soliciting such signatures, as required by Section 4785-176, General Code, all of which requirements or similar requirements have been held by this qpurt, or other courts, to be mandatory.
 
 Thrailkill
 
 v.
 
 Smith, Secy. of State,
 
 106 Ohio St., 1, 138 N. E., 532;
 
 State, ex rel. Patton,
 
 v.
 
 Myers, Secy. of State,
 
 127 Ohio St., 95, 186 N. E., 872, 90 A. L. R., 570;
 
 State, ex rel. Gongwer,
 
 v.
 
 Graves, Secy. of State,
 
 90 Ohio St., 311, 107 N. E., 1018;
 
 Uhl
 
 v.
 
 Collins,
 
 217 Cal., 1, 17 P. (2d), 99, 85 A. L. R., 1370;
 
 Devine
 
 v.
 
 State, ex rel. Tucker,
 
 105 Ohio St., 288, 136 N. E., 922;
 
 Perkins et al., Bd. of Edn.,
 
 v.
 
 Bright,
 
 109 Ohio St., 14, 141 N. E., 689;
 
 Bd. of Edn. of Ashville Village School Dist.
 
 v.
 
 Briggs, Aud.,
 
 114 Ohio St., 415, 151 N. E., 327.
 

 The answer further alleges that six per cent of the electors of Ohio, the number required by the Constitution'to invoke the referendum machinery, is 144,773; that the papers filed with the Secretary of State do not contain 146,347 signatures, as claimed, but for the reasons before stated, apparent upon the face and without proof
 
 aliunde,
 
 contain but 139,058 signatures; and that the papers so filed, therefore, do not in fact constitute a petition for referendum, which facts were found and determined by the Secretary of State.
 

 Conceding the foregoing facts to be true as they have been conceded by the relator in filing his demurrer to the answer, the inescapable conclusion must be that the so-called petition filed with the Secretary of State clearly appears on its face inadequate and insufficient to constitute a valid referendum petition under the requirements of the Constitution and statutes now in force with reference thereto.
 

 The only question remaining is: Who is to determine in the first instance the adequacy or inadequacy on its face of a petition for a referendum under the Constitution and statutes? Section 4785-7, General
 
 *11
 
 Code, provides that “It shall be the duty of the Secretary of State * * * to receive and to determine the sufficiency of all initiative and referendum petitions on state questions and issues as hereinafter provided, and, to certify to the sufficiency of such petitions; * * Section 1c of Article II of the Constitution provides that “When [and this must mean only when] a petition, signed by six per centum of the electors of the state [and this must mean signatures valid on their face] and verified as herein provided, shall have been filed with the Secretary of State within ninety days after any law shall have been filed by the Governor in the office of the Secretary of State,
 
 * * *
 
 the Secretary of State shall submit to the electors of the state for their approval or rejection such law,
 
 * * *
 
 in the manner herein provided * *
 

 The majority bases its conclusion upon the decision of this court in the ease of
 
 State, ex rel. McCrehen,
 
 v.
 
 Brown, Secy. of State,
 
 108 Ohio St., 454, 141 N. E., 69, in which the court differentiated its decision from the decision in the
 
 Graves case, supra,
 
 upon the amendment of the statuté subsequent to the decision of the latter case, which statute, in important respects, vitally modified the power and authority of the Secretary of State. However, we direct attention to the fact that, by the revision and supplementation of the election laws in 1929 (113 Ohio Laws, 307), after the decision of the
 
 Brown case
 
 in 1923, the duties, powers and authority relating to referendum petitions were restored to the Secretary of State substantially the same as they existed at the time of the decision of the
 
 Graves case
 
 .
 

 Section 5175-29), General Code, the repeal of which is given as a basis for the decision of the
 
 Brown case,
 
 provided that after the petitions were returned from the several boards of deputy state supervisors of elections the “Secretary of State shall make his decision as to the sufficiency of the petition, giving the reasons
 
 *12
 
 for or against its sufficiency. ’ ’ But a similar provision now appears in Section 4785-179, General Code, and further authority in this respect is given by Section 4785-7, General Code, above quoted. Section
 
 5175-291
 
 (repealed 106, Ohio Laws, 295) gave the Secretary of State power, to subpoena and administer oaths to witnesses for the purpose of facilitating such inquiry when necessary, and Section 4785-7, General Code, which is an entirely new section, restores such powers. However in the instant case .no such inquiry is necessary because the defects appear on the face of the alleged referendum petition. Section 5175-29Í, .General Code, was relied upon in the
 
 Brown case
 
 because it contained the provision that the board of deputy state supervisors of elections “shall also scrutinize all parts of the petition * * * for repetition of signatures, illegal signatures
 
 and for the omission of any of the formal or other requisites set forth in the Constitution,,”
 
 (Italics ours.) This section has been repealed (113 Ohio Laws, 307) and the corresponding provision of the General Code, Section 4785-178, provides instead that “The several boards shall proceed at once to ascertain * * * the number of illegal signatures
 
 and the omission of an%y necessary details
 
 re
 
 quired by law.
 
 The board shall make note opposite such signatures, submit a report to the Secretary of State indicating the sufficiency or insufficiency of such signatures * * The italicized portion of old Section 5175-29Í, upon which the court so strongly relied in the
 
 Brown case,
 
 was materially changed. Hence, the present law on this subject, Sections 4785-178, 4785-179 and 4785-179», General Code, limits the consideration and report of the boards of elections to the Secretary of State to the matters named therein.
 

 It must be conceded, as indeed it was conceded in oral argument, that if an alleged petition did not contain signatures in excess of six per cent of the electors of the state, the Secretary of State would not be re
 
 *13
 
 quired to recognize it or file it as a referendum petition. For the same reason, in our opinion, lie is not obliged to recognize or file it if, after eliminating signatures which, are obviously and clearly illegal and insufficient, there remain less signatures than the number required to make a valid petition. The majority members of this court conceded that .the Secretary of State must reject 207 signatures because the parts of the petition on which they appear were not verified by the circulators as required by the Constitution. By the same token, the Secretary of State is required to reject 5,343 signatures because the parts of petition on which they appear contain no certification on the part of the solicitor as to what compensation or property he had received or expected to receive for his services in soliciting such signatures, as legally required by Section 4785-176, General Code, this being a mandatory requirement of the same character as that of the affidavit above referred to, both deficiencies being equally apparent on the face of the petition.
 

 Aside from his later duty to pass upon the sufficiency of the petition after the parts are returned by the boards of elections, clearly, the Secretary of State, under the Constitution and statutes, must in the first instance make certain observations and some definite findings as to such petition. He must determine whether it is filed within the ninety-day'period; and whether it is apparently signed by six per. cent of the electors; whether the signatures are written in ink or indelible pencil; whether the parts of the petition on which signatures appear were verified by the circulator ; and whether the circulator has certified by his signature as to what compensation or property he has received or expects to receive for his services in soliciting such signatures. In so doing, must the Secretary of State consider signatures clearly illegal and insufficient on the face of the so-called petition? In our opinion to so hold is not only against legal reasoning,
 
 *14
 
 but against governmental regularity itself, since it ' would permit less than six per cent of the electors of the state, by the filing of a so-called referendum petition, admittedly insufficient on its face, to suspend the operation of an act of the Legislature contrary to the. provisions of the Constitution itself, including the provision that the petition must be filed within the ninety-day period. If the ninety-day constitutional limitation for filing referendum petitions means anything, it must contemplate and require that a petition,
 
 prima facie
 
 valid and sufficient bn its face, be filed within that period.
 

 Under the provisions of the Constitution and statutes, the Secretary of State cannot be regarded as a mere automaton and as such required to accept and treat as valid every so-called referendum petition without question and without respect to its obvious invalidity. We hold that when the Constitution provides that a petition must be filed, it must be a petition having on its face the requisite number of signatures,
 
 prima facie
 
 legal, and that in making such determination the Secretary of State cannot consider signatures, on-their face, clearly illegal.
 

 Under the facts admitted by the demurrer, the conclusion is inevitable that no duty devolved upon the Secretary of State to forward such papers to the various county boards of elections. The demurrer to the answer should be overruled.